UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| ANTHONY CHAMBLEE | * | CIVIL ACTION NO.  08-1351 |
| | * | |
| VERSUS | * | |
| | * | |
| YAMAHA MOTOR CO., LTD., | * | JUDGE:  DONALD E. WALTER |
| YAMAHA MOTOR CORPORATION | * | |
| U.S.A. AND YAMAHA MOTOR | * | |
| MANUFACTURING CORPORATION | * | MAGISTRATE:  MARK L. HORNSBY |
| OF AMERICA | * | |

******************************************************************************

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING PROXIMATE CAUSATION

**MAY IT PLEASE THE COURT:**

The Louisiana Products Liability Act requires a plaintiff to prove that his damages were proximately caused by an unreasonably dangerous characteristic of a product during a reasonably anticipated use.  There are a variety of plausible explanations as to how a motor vehicle accident might happen or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only.  Even when the evidence is considered in a light most favorable to him, Mr. Chamblee cannot produce sufficient evidence for a jury to conclude (more probably than not) that *this accident* was caused by an unreasonably dangerous condition of the Yamaha Rhino.

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

TABLE OF CONTENTS..........................................................................................1

TABLE OF AUTHORITIES .....................................................................................2

    I.  FACTUAL BACKGROUND.........................................................................4

1

II.  LAW AND ARGUMENT ........................................................................................5

    1.      Summary Judgment Standard ...................................................5

    2.      There is an absence of evidence on whether, in this
              particular instance, the injury was caused by the allegedly
              defective condition ..........................................................................6

    3.      A plaintiff asserting a product liability claim must prove that
              the damage for which he seeks to recover was "proximately
              caused by a characteristic of the product that renders the
              product unreasonably dangerous."  Mr. Chamblee is
              required to eliminate alternative causes with "reasonable
              certainty."  Mr. Chamblee has not produced sufficient
              evidence to establish a defect as the *most likely cause* of
              *his* accident; therefore, summary judgment should be granted.................8

    4.      Although not required, Defendants have established
              that the subject accident was proximately caused by
              Mr. Chamblee's actions rather than an unreasonably
              dangerous characteristic of the product ......................................15

  III.     CONCLUSION........................................................................................18

## TABLE OF AUTHORITIES

**Federal Rules**

Fed. R. Civ. P. 56 .....................................................................................................5

**Statutes**

La. Rev. Stat. Ann. § 9:2800.52................................................................................8

La. Rev. Stat. Ann. § 9:2800.54................................................................................8

**Cases**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) ............................................5

*Belleau v. Bridgestone/Firestone North American Tire, LLC,*
No. 05-192 (M.D. La. Feb. 28, 2008), 2008 WL 565480................................................6

*Brown v. Parker-Hannifin Corp.,* 919 F.2d 308 (5th Cir. 1990) ...............................9, 10

*Burnett v. State Farm Fire and Cas. Co.* 09–166
(M.D. La. 11/22/2011), 2011 WL 5855344 ...............................................................5

*Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986) ...............................................5, 6

*George v. Housing Authority of New Orleans,* 2004-2167
(La. App. 4 Cir. 6/29/05), 906 So.2d 1282 ...............................................................8

*Gladney v. Milam,* 39-982 (La. App. 2nd Cir. 9/21/05), 911 So.2d 366 ...................6, 7

*Gonzalez v. Government Employees Ins. Co.* 09-140
(La. App. 5 Cir. 2/9/10), 32 So.3d 919 ...................................................................11

*Goode v. Herman Miller, Inc.,* 811 F.2d 866, 871-72 (5th Cir. 1987) ...........................5

*Grimes v. Tex. Dep't of Mental Health,* 102 F.3d 137, 139–40 (5th Cir.1996) ............5

*Haskins Trucking Inc. v. Goodyear Tire & Rubber Co.,*
07-0585 (W.D. La. 4/17/08), 2008 WL 1775272 .........................................................9

*Latimer v. Smithkline & French Lab.,* 919 F.2d 301, 303 (5th Cir. 1990) ...............6, 15

*Larry v. White,* 929 F.2d 206, 211 n.12 (5th Cir.1991), *cert. denied,* 507 U.S. 1051 ...................5

*Lyncker v. Design Engineering, Inc.,* 2010-0740
(La. App. 4 Cir. 10/20/10), 51 So.3d 137 ...............................................................11

*McCallum Highlands v. Washington Capital Dus, Inc.,* 66 F.3d 89 (5th Cir.1995) ......................9

*Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 243 (5th Cir. April 18, 2002).........................9

*Stahl v. Novartis Pharmaceuticals, Corp.,* 283 F.3d 254 (5th Cir. 2002) .....................8

*State v. Gourdine,* 41,469 (La. App. 2 Cir. 12/13/06), 946 So.2d 277 .........................11

*Updegraff v. State ex rel. Dept. of Transp. and Development,*
2001-1048 (La. App. 4 Cir. 10/2/02) 828 So.2d 693 ................................................11

*Wheat v. Pfizer, Inc.,* 31 F.3d 340, 342-43 (5th Cir.1994) ..........................................9

## **Web Site**

http://www.cdc.gov/Motorvehiclesafety/Impaired_Driving/index.html .........................12

## I.     FACTUAL BACKGROUND

Anthony "Tony" Chamblee sustained injuries to his lower left leg on September 17, 2007 while operating a 2007 Yamaha Rhino 660 that was owned by Pat Baird.  (R. Doc. 1, at ¶¶ 11 and 14).  Following a weekend drug binge where he consumed marijuana, cocaine, barbiturates and opiates, Mr. Chamblee traveled to the home of Pat Baird, the owner of the Rhino.  *See* deposition excerpts of Anthony Chamblee, at pp. 310-16, attached to Motion for Summary Judgment Regarding Proximate Causation as Exhibit "A".  Mr. Chamblee was visiting a friend, Elizabeth Williams, at Mr. Baird's home.  Exhibit "A", at pp. 314-15.  Mr. Chamblee admitted to consuming "three or four" beers while at the house.  Exhibit "A", at pp. 317-18; and Plaintiff Fact Sheet, at Q. 69, attached to Motion for Summary Judgment Regarding Proximate Causation as Exhibit "B".  Thereafter, Mr. Chamblee and Ms. Williams used Mr. Baird's Yamaha Rhino to look around Mr. Baird's property.  Exhibit "A", at p. 328.  According to Mr. Chamblee, while making a turn at a steady five to eight miles an hour on flat gravel terrain, the Rhino overturned.  Exhibit "A", at pp. 337 and 344.  In violation of the on-product warnings Mr. Chamblee was not wearing his seatbelt or any protective gear at the time of the accident.  Exhibit "B", at QQ. 86 and 87.

Mr. Chamblee, in his complaint for damages, alleged that the Yamaha Rhino was (1) "unreasonably dangerous in design," as provided in La. R.S. 9:2800.56, (2) "unreasonably dangerous because an adequate warning about the product was not provided at the time of purchase," as provided in La. R.S. 9:2800.57, and (3) "unreasonably dangerous because it did not conform to an express warranty of the manufacturer about the product," as provided in La. R.S. 9:2800.58."  (R. Doc. 1, at ¶13).

00274645-1                                      4

## II.      LAW AND ARGUMENT

### 1.      Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." *Burnett v. State Farm Fire and Cas. Co*. 09–166 (M.D. La. 11/22/2011), 2011 WL 5855344 at *2 (citing Fed. Rule Civ. P. 56(a)).   The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case.  *Burnett,* 2011 WL 5855344 at *2 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)).  When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case.  *Burnett,* 2011 WL 5855344 at *2.  The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case.  *Id.*  A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." *Id.* (citing Fed. Rule Civ. P. 56(c)(1)).

Although the Court considers evidence in a light most favorable to the nonmoving party, the non-moving party must show that there is a genuine issue for trial.  *Burnett,* 2011 WL 5855344 at *2 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49 (1986)). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden.  *Id.* (citing *Grimes v. Tex. Dep't of Mental Health,* 102 F.3d 137, 139–40 (5th Cir.1996)).   Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Id.* (citing *Larry v. White,* 929 F.2d 206, 211 n.12 (5th

Cir.1991), *cert. denied,* 507 U.S. 1051).  If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex,* 477 U.S. at 322.

> **2.  There is an absence of evidence on whether, in this particular instance, the injury was caused by the allegedly defective condition.**

Yamaha, for purposes of summary judgment, is not required to submit evidentiary documents to support its motion, but needs only to point out the absence of evidence supporting Mr. Chamblee's claims.  *Latimer v. Smithkline & French Lab.,* 919 F.2d 301, 303 (5th Cir. 1990).  For example, in *Belleau v. Bridgestone/Firestone North American Tire, LLC,* No. 05-192 (M.D. La. Feb. 28, 2008), 2008 WL 565480 at *4, the court dealt with a products liability action that arose out of an automobile accident caused by an allegedly defective tire manufactured by the defendant. The plaintiffs offered only their testimony of what happened prior to the accident.  *Id.*  The court reasoned that such testimony was insufficient to prove that the accident was caused by a defective tire and held that the plaintiffs were unable to meet their burden of proving that the tire was defective or unreasonably dangerous without the assistance of expert testimony.  *Id.*

Another example is the case of *Gladney v. Milam,* 39-982 (La. App. 2nd Cir. 9/21/05), 911 So.2d 366.  In that case, the plaintiffs presented expert testimony and photographic evidence which they argued was sufficient to create a genuine issue of material fact regarding the issue of whether the tires at issue were defective, thus defeating summary judgment.  *Id.* at 370.  The defendants also submitted expert affidavits in support of their motion for summary judgment. *Id.* at 370-371. The district court granted summary judgment in favor of defendants. On appeal, the

plaintiffs argued that the district court improperly weighed the credibility of the expert witnesses.

*Id.* at 371. The appellate court disagreed:

> Contrary to plaintiffs' contention, the court did not weigh the credibility of the parties' experts. Rather, the court reviewed the expert affidavits and accepted the opinions of plaintiffs' experts as true. However, the court found that the opinions of [the plaintiffs' experts] were not sufficient to create a factual issue regarding a defective condition in the tire.
>
> *   *   *
>
> At trial, the plaintiffs would have the burden of proving by a preponderance of evidence that a characteristic of the tire made it unreasonably dangerous, or that the tire was negligently maintained, thereby causing the accident. However, the plaintiffs' experts did not know the air pressure at the time of the accident or when the pressure was last checked, and could only speculate that the tire was defective given the visible damage to the tire depicted in the photographs. Thus, although the circumstantial evidence offered by plaintiffs raised several plausible explanations for the cause of the tire's failure, the record does not contain sufficient evidence from which a reasonable juror could conclude that more probably than not the accident was caused by either a defective condition of the tire or negligent maintenance.

*Id.* at 371.

Focusing on proximate causation, like the plaintiffs in *Gladney*, Mr. Chamblee has not come forward with sufficient evidence from which a reasonable juror could conclude that more probably than not the damages in this case were caused by a defective condition of the Yamaha Rhino.  Mr. Chamblee, in fact, has not retained a single **case-specific** expert to support his claim that, in *this* particular motor vehicle accident, the injury was caused by an allegedly unreasonably dangerous characteristic of Yamaha's product.   Mr. Chamblee incorrectly assumed that the "proximate cause" barrier is overcome by simply relying on generic testimony of the MDL "common" experts.  But, without a case-specific expert to tie the MDL common experts' general opinions to the facts of *this* case, nothing in the record establishes a defect as the "most likely cause."    In other words, the Yamaha Defendants demonstrate an absence of evidence from Mr.

Chamblee regarding an essential prerequisite to his claims – proximate cause – which is fatal to his claims.

> **3.**   **A plaintiff asserting a product liability claim must prove that the damage for which he seeks to recover was "proximately caused by a characteristic of the product that renders the product unreasonably dangerous."[1]   Mr. Chamblee is required to eliminate alternative causes with "reasonable certainty."   Mr. Chamblee has not produced sufficient evidence to establish a defect as the *most likely cause* of *his* accident; therefore, summary judgment should be granted.**

The Louisiana Products Liability Act (LPLA) establishes the exclusive theories of liability for damage caused by manufacturers' products.  La. R.S. 9:2800.52. A manufacturer shall be liable to a claimant for damage ***proximately caused*** by an unreasonably dangerous product during a reasonably anticipated use. La. R.S. 9:2800.54(A).  Liability will be imposed when a product is unreasonably dangerous because of (1) construction or composition, (2) design, (3) inadequate warning, or (4) nonconformity with an express warranty.  La. R.S. 9:2800.54(B).  The claimant has the burden of proving the elements of Subsections A and B.  La. R.S. 9:2800.54(D).

The "initial element" that a plaintiff must establish pursuant to the LPLA is proximate cause, that is, a link between the actions of the manufacturer and the injury causing product. *George v. Housing Authority of New Orleans,* 2004-2167 (La. App. 4 Cir. 6/29/05), 906 So.2d 1282, 1286 (citing *Stahl v. Novartis Pharmaceuticals, Corp.,* 283 F.3d 254 (5th Cir. 2002)).  The term "proximate cause," as used in the context of the LPLA, is defined just as it is in negligence law.  A plaintiff therefore must show that the alleged "unreasonably dangerous condition" of the product was the cause which, in natural and continuous sequence, and unbroken by any efficient,

---

[1]   La. R.S. 9:2800.54(A)

intervening cause, produced injury, and without which the injurious result would not have occurred.  Irrespective of a plaintiff's theory of recovery, causation is a central element in a products liability case.

Under Louisiana law, a plaintiff must "come forward with sufficient evidence from which a reasonable juror could conclude that more probably that not the damages *in this case* were caused by a defective condition of the [product]." *Haskins Trucking Inc. v. Goodyear Tire & Rubber Co.,* 07-0585 (W.D. La. 4/17/08), 2008 WL 1775272 at *6 (emphasis added) (entering summary judgment where plaintiff failed to produce expert evidence proving alleged defect *caused* plaintiffs alleged damages).  A plaintiff is not required to eliminate every possible alternative cause of his injuries, but he must eliminate alternative causes with "reasonable certainty."  *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. April 18, 2002); *see also*, *Wheat v. Pfizer, Inc.,* 31 F.3d 340, 342-43 (5th Cir.1994)(By failing to exclude other potential causes of illness, Plaintiffs did not offer sufficient evidence from which a reasonable jury could conclude that the drug was the most probable cause of the decedent's illness).  As the United States Court of Appeals for the Fifth Circuit has instructed, "[w]e do not in the absence of proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands v. Washington Capital Dus, Inc.,* 66 F.3d 89 (5th Cir.1995).

The Fifth Circuit's decision in *Brown v. Parker-Hannifin Corp.,* 919 F.2d 308 (5th Cir. 1990) is instructive.  The plaintiff in *Brown* sued the manufacturer of a quick-release coupling, contending that his injuries resulted from either a manufacturing defect or inadequate labeling. *Id.* at 309.  The plaintiff's expert in *Brown* did not inspect the product at issue nor was he familiar with specific details about the product; instead, he theorized generally concerning two

potential causes of failure that would support a finding of liability against the defendant. *Id*. at pp. 311-12.

The Court noted that "[w]hile either of these two theories are possibilities, other theories explain the failure equally well. As [the expert] admitted in his deposition, corrosion, abuse, or normal wear and tear could have caused the failure. Without some basis to establish that one of his theories is the most likely cause of the failure on this occasion, his testimony amounts to speculation and is of no assistance to the jury." *Brown*, 919 F.2d at p. 312. The appellate court hypothesized a number of potential causes that were not considered by plaintiff's expert, and ultimately concluded that "[t]he list of possibilities is almost endless. ***And while our common sense tells us that some are more likely than others, nothing in the record establishes either a defect or over-pressurization as the most likely cause***." *Id*. (emphasis added). The Court ultimately affirmed the directed verdict by the trial court because plaintiff failed to present sufficient evidence to establish the most probable cause of the failure. *Id*.

The same analysis applies in this case. Motor vehicle crashes occur every day. Common sense and personal experiences presuppose a number of factors that can (and often do) cause or contribute to motor vehicle accidents. Mr. Chamblee himself identified several factors that can cause *any* off-road vehicle to roll-over, i.e., operating too fast, turning too sharply, and operating on uneven terrain. Exhibit "A," at p. 248. Other factors might include (1) time/speed/position of the vehicle, (2) driver input/human factors, (3) weight (including passengers), (4) surface character, (5) surface deposits, (6) equipment condition, (7) the influence of alcohol and drugs, (8) weather and lighting at the time of accident, (9) turn radius prior to the accident, (10) operator error, (11) vehicle modifications (non-stock tires), (12) distractions, etc. Some of these

factors may be obvious, but others are more difficult to determine and necessitate expert analysis.

The variability or presence of any one of the abovementioned factors are basic considerations for a plaintiff burdened with proving the most probable cause of a motor vehicle accident. Several of these factors are routinely identified as being the proximate cause of an accident.[2] Other factors, specifically human factors, are very complex and difficult to isolate, but nonetheless, are critical in determining proximate causation.

The evidence in this case does not establish a causal link between an unreasonably dangerous characteristic of the Yamaha Rhino and Mr. Chamblee's alleged injuries. The evidence, if anything, leads to the conclusion that, more probably than not, Mr. Chamblee's accident occurred for reasons other than an alleged defect. Mr. Chamblee, for example, testified that he drank three or four beers before operating the vehicle on the day of the accident. Exhibit "A," at p. 310. A toxicology screen performed at the hospital on date of the accident confirms that Mr. Chamblee was positive for alcohol, cocaine, benzodiazepines, and cannabinoids. *See* LSU Medical Health Sciences Center records excerpts, bates-labeled LA-CHAM-LSU 01601-07, attached to Motion for Summary Judgment Regarding Proximate Causation as Exhibit "C".

---

[2]     *Lyncker v. Design Engineering, Inc.*, 2010-0740 (La. App. 4 Cir. 10/20/10), 51 So.3d 137 (grossly negligent operation of a motor vehicle while severely intoxicated is the sole and proximate cause-in-fact of plaintiff's accident); *Gonzalez v. Government Employees Ins. Co.* 09-140 (La. App. 5 Cir. 2/9/10), 32 So.3d 919 (combination of speed, alcohol, a wet road, and operator negligence was the proximate cause of the accident); *State v. Gourdine*, 41,469 (La. App. 2 Cir. 12/13/06), 946 So.2d 277 (criminal law)(reasonable conclusion that defendant's substantial speeding, driving with a blood-alcohol content above the legal limit, and delayed reaction time were proximate cause accident); *Updegraff v. State ex rel. Dept. of Transp. and Development*, 2001-1048 (La. App. 4 Cir. 10/2/02) 828 So.2d 693 (driver error was a contributing factor in causing the accident - driver tested positive for opiates and marijuana and she admitted that she had consumed some beer and had taken some prescription medication before the accident).

This fact is significant from a causation standpoint considering that the Centers for Disease Control and Prevention reports that nearly one-third of motor vehicle crash deaths involve alcohol impaired drivers.[3]

Reckless driving is another common cause of motor vehicle accidents.  Mr. Chamblee described himself as a "risk taker" when asked to characterize his riding style.  Exhibit "A", at p. 200.  The testimony provided by the sole passenger, Elizabeth Williams, leads to the conclusion that the accident was caused by the way in which Mr. Chamblee was operating the Rhino.  Ms. Williams explained that she asked Mr. Chamblee to "please turn the thing around to go home," and he "suddenly jerked it the other way" and "turned it really sharply going too fast and it flipped."  *See* deposition excerpts of Elizabeth Williams, at pp. 99-100, attached to Motion for Summary Judgment Regarding Proximate Causation as Exhibit "D".  Indeed, the Rhino flipped as Mr. Chamblee was doing a second round of donuts.   Exhibit "D", at p. 98.  Ms. Williams explained:

> Q.     Did the Rhino flip over while Mr. Chamblee was doing that second round of donuts?
>
> A.     Yes.  In the donuts, I said, I've had enough; I'd like to go home.  He made an abrupt turn, which I'm assuming was to go back to the house, and that's when it flipped.
>
> Q.     So is it fair to say that he had completed this second round of donuts because you said, I had enough?
>
> A.     No.  He was – the vehicle never stopped.  I think he was going one way, and he jerked it the other way.

Exhibit "D", at pp. 98-99

---

[3]     http://www.cdc.gov/Motorvehiclesafety/Impaired_Driving/index.html

Ms. Williams explained that if she had been driving the Rhino, she "would have slowed down before trying to turn that sharp." Exhibit "D", at 99-100. The manner in which Mr. Chamblee was operating the Rhino "seemed like [they] were going one way, and he suddenly jerked it the other way. And it was upside down." *Id.* Ms. Williams believes the rollover was caused by Mr. Chamblee turning too sharply and going too fast. *Id.* She blamed the cause of the accident on "intoxication and reckless driving." Exhibit "D", at p. 70. Ms. Williams, in fact, testified that she does not believe there was anything wrong with the Rhino:

> Q. Do you feel that there was something wrong with the Rhino that caused it to flip over?
>
> A. No, I do not. I feel that Mr. Chamblee was impaired.

Exhibit "D", at p. 70.

Even more disturbing is Ms. Williams' testimony that Mr. Chamblee attempted to bribe her for favorable testimony in this litigation:

> Q. Did [Tony] try to suggest to you that you should give him favorable testimony in the litigation?
>
> A. Yes, he did.
>
> Q. What did he tell you?
>
> A. Well, he said that he was going to go after a lot of money and that he was willing to give me a percentage of it if I were to testify that he didn't drive at all recklessly, and that he was not under the influences of any substances to my knowledge.
>
> Q. So he specifically told you that if you would say that he was not driving recklessly, that he would give you a percentage of whatever –
>
> A. Yes, he did.
>
> Q. -- funds he would get out of the litigation?
>
> A. Yes, he did.

> Q.     Did he specifically tell you that if you would say he was not under the influence of alcohol or drugs, that he would give you a portion of any proceeds from the litigation?
>
> A.     Yes, he did.

Exhibit "D", at pp. 53-54.[4]

Regardless, Mr. Chamblee himself agrees that it is possible to "roll-over" any type of vehicle and that each accident depends on the circumstances.  Exhibit "A," at p. 248.  There is no evidence, expert or otherwise, that excludes Mr. Chamblee's own negligent operation or his intoxication as alternative causes of this accident.  Mr. Chamblee only theorizes that this accident was caused by a defective condition of the Rhino.  But without some basis to establish that Mr. Chamblee's theory is the most likely cause of the failure on this occasion, his testimony amounts to speculation and is of no assistance to the jury.

Mr. Chamblee does not raise any reasonable inference of proximate causation nor eliminate alternate causes of *this* accident.  The Fifth Circuit has noted that "[w]here several possible causes in fact are established with *equal probability* but no one is shown by the preponderance which the law demands, the plaintiff has not discharged the burden of proof." *Goode v. Herman Miller, Inc.,* 811 F.2d 866, 871-72 (5th Cir. 1987).  Any conclusion regarding causation *in this case* can be reached only by speculation or stacking inferences.  As such, Mr. Chamblee cannot establish this essential element of his claim, as required by LSA-R.S. 9:2800.54 (A).

---

[4]     Indeed, Mr. Chamblee's attempt to bribe the witness here is not the only indication of his veracity.  Mr. Chamblee is currently incarcerated in Louisiana's penal system for several crimes indicating his questionable veracity, including numerous thefts, burglary and forgery.  *See* Winn Correctional Center Master Prison Record, bates-labeled LA-CHAM-WCC 000001-000011, attached to Motion for Summary Judgment Regarding Proximate Causation as Exhibit "E"; and Exhibit "A" at p. 26.

**4.      Although not required, Defendants have established that the subject accident was proximately caused by Mr. Chamblee's actions rather than an unreasonably dangerous characteristic of the product.**

Defendants here are not required to submit evidentiary documents to support their motion, but needed only to point of the absence of evidence supporting the Plaintiffs' claims. *Latimer v. Smithkline & French Lab.,* 919 F.2d 301, 303 (5th Cir.1990).   Nonetheless, the defendants here have demonstrated through expert testimony that Mr. Chamblee's accident was caused by his own actions rather than any characteristic of the Yamaha Rhino.   The defendants have demonstrated that: 1) Mr. Chamblee's drug and alcohol use was a substantial cause of his accident; and 2) Mr. Chamblee's aggressive operation of the Rhino, rather than the vehicle's design and handling and stability characteristics, caused the accident.

Here, Dr. Barbara Manno, a toxicologist, offers opinions on Mr. Chamblee's impairment at the time of the accident.   *See* D. Manno Affidavit, attached to Motion for Summary Judgment Regarding Proximate Causation as Exhibit "F".   Dr. Manno calculated that Mr. Chamblee's blood alcohol content was .136 Gm% at the time of the accident and that "…based upon Mr. Chamblee's blood alcohol concentration at the time of his September 17, 2007 accident he was experiencing loss of vigilance, drowsiness, misinterpretation of vision, slowed response time in avoidance maneuvers, and his complex reaction time was twice the reaction time than if he had a blood alcohol concentration of 0.0 Gm% (0.0mg/dl)."   Exhibit "F", at ¶ 11.   Thus, Dr. Manno opined:

> With a reasonable degree of toxicological certainty, it is more probable than not that the blood alcohol concentration in Mr. Chamblee impaired his ability to recognize the dangers associated with driving the Rhino as described.   It would have produced a delayed reaction to a sensed need for an avoidance maneuver and a slowed response to executing the maneuver.

* * *

With a reasonable degree of toxicological certainty, Mr. Chamblee's use of Marijuana, Cocaine and Benzodiazepines would have resulted in an interaction that enhanced the psychomotor impairment from alcohol, although the psychomotor decrements produced by alcohol alone were sufficient to be a causative factor in this accident.

Exhibit "F", at ¶¶ 14 and 15.

Dr. Manno concluded that Mr. Chamblee's intoxication with alcohol was a major causative factor in this accident.  Exhibit "F", at ¶ 17.

Similarly, Dr. Graeme Fowler examined the subject Yamaha Rhino and the accident site, along with other evidence, to evaluate the Rhino's handling and stability characteristics in relation to Mr. Chamblee's actions.  *See* G. Fowler Affidavit, attached to Motion for Summary Judgment Regarding Proximate Causation as Exhibit "G".  Based upon his evaluation, he opined:

The evidence establishes that Mr. Chamblee was engaged in intentionally aggressive operation of the Rhino at the time of the September 17, 2007 accident while under the influence of alcohol(Deposition testimonies of Mr. Baird, Mr. Chamblee and Ms. Williams, Dr. Manno report and vehicle inspection).

\* \* \*

With a reasonable degree of scientific certainty, it is my opinion that Mr. Chamblee was performing an extended series of stunts which required the imprudent use of aggressive throttle and steering inputs in violation of on-product warnings leading to his loss of control.

\* \* \*

With a reasonable degree of scientific certainty, it is my opinion that additional risky behavior included the failure to use the available restraints (seatbelt) which likely compromised his ability to maintain his position in the driver's seat allowing for his leg to be impacted by the roof support structure.

Exhibit "G", at ¶¶ 9-11.

Thus, Dr. Fowler opined:

16

With a reasonable degree of scientific certainty, it is my opinion that the subject accident was not the result of any design defect associated with the vehicle's handling and stability characteristics.   Rather, the accident was proximately caused by Mr. Chamblee operating the Rhino in an intentionally aggressive manner while under the influence of alcohol in violation of numerous on-product warnings.

Exhibit "G", at ¶ 13.

Another expert, Kevin Breen, reconstructed the accident and confirmed that the cause of the subject accident was aggressive, unnecessary operation of the vehicle by Mr. Chamblee that resulted in loss of control and the overturn of the Rhino. *See* K. Breen Affidavit, attached to Motion for Summary Judgment Regarding Proximate Causation as Exhibit "H", at ¶ 11.  As Mr. Breen explained:

The evidence establishes that subject accident involves factors in addition to, or different from, that described by Chamblee's account of the accident.   (Deposition testimonies of Mr. Baird, Mr. Chamblee and Ms. Williams, scene and vehicle inspections).

\* \* \*

With a reasonable degree of scientific certainty, it is my opinion that there is no evidence that the design, manufacture, testing, or warnings caused or contributed to the loss of control event in which Chamblee was injured.

\* \* \*

With a reasonable degree of scientific certainty, it is my opinion that the cause of the subject accident was aggressive, unnecessary operation of the vehicle by Mr. Chamblee that resulted in loss of control and the overturn of the Rhino.

Exhibit "H", at ¶¶ 9-11.

Thus, Mr. Breen opined:

With a reasonable degree of scientific certainty, it is my opinion that key factors related to the cause of this accident are clearly warned against behavior and conduct by Chamblee including consumption of alcohol and possible effects of drugs, aggressive operation, and failure to utilize the available seat belt.   The accident is most likely associated with an aggressive, sharp steering input at an excessive speed and/or acceleration while under the influence of alcohol and possibly drugs.

* * *

With a reasonable degree of scientific certainty, it is my opinion that the accident was not caused or contributed to by the design or operating characteristics of the Yamaha Rhino.

Exhibit "G", at ¶¶ 12-13.

In summary, while not required of defendants, Yamaha has established that the accident here was a consequence of Mr. Chamblee's actions, rather than a characteristic of the Rhino. As such, Mr. Chamblee is unable to substantiate his claim that the accident was proximately caused by an unreasonable dangerous characteristic of the Rhino.

## III.    CONCLUSION

Mr. Chamblee is essentially asking the court – and will later ask the jury – to assume that any accident involving a Yamaha Rhino is the result of a defect, simply because the accident occurred.  This contradicts Mr. Chamblee's burden to establish proximate causation under the LPLA.  It also fails to raise any genuine issue of material fact as to whether Mr. Chamblee can prove at trial that his injuries were proximately caused by a condition of the Yamaha Rhino. There is insufficient evidence to create a factual issue regarding proximate causation, summary judgment should be granted.

Respectfully submitted,

**DUPLASS, ZWAIN, BOURGEOIS,
PFISTER & WEINSTOCK**

s/Joseph G. Glass

_____

**JOSEPH G. GLASS, T.A.  #25397
LAWRENCE J. DUPLASS#5199**
3838 North Causeway Blvd., Suite 2900
Metairie, Louisiana 70002
TELEPHONE:  (504) 832-3700
lduplass@duplass.com
jglass@duplass.com
**Counsel for Defendants, Yamaha Motor Corporation,
U.S.A. and Yamaha Motor Manufacturing Corporation
of America**

## <u>C E R T I F I C A T E</u>

I hereby certify that on the 12th day of January, 2012, a copy of the foregoing pleading

was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing

will be sent to all counsel by operation of the Court's electronic filing system.

s/Joseph G. Glass

_____

**JOSEPH G. GLASS #25397**
jglass@duplass.com

00274645-1                                       19